UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN LANE,

    Plaintiff,                                    Hon. Janet T. Neff

v.                                                        Case No. 1:08-CV-769

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 40 years of age at the time of the ALJ's decision. (Tr. 17). He successfully completed high school and worked previously as a materials handler and leather trimmer. (Tr. 17, 73-74).

Plaintiff applied for benefits on September 19, 2005, alleging that he had been disabled since August 10, 2005, due to knee pain, obesity, and diabetes. (Tr. 56-58, 65). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 20-49). On December 13, 2007, Plaintiff appeared before ALJ John Kraybill, with testimony being offered by Plaintiff, medical expert, Dr. Lawrence Perlman, and vocational expert, Thomas Gusloff. (Tr. 184-204). In a written decision dated January 25, 2008, the ALJ determined that Plaintiff was not disabled. (Tr. 13-19). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On January 21, 2005, Plaintiff participated in an MRI examination of his right knee, the results of which revealed: (1) no evidence of a ligamentous injury; (2) tears of the medial and

3

lateral menisci; (3) mild degenerative changes; (4) small joint effusion; and (5) small popliteal cyst[1]. (Tr. 124). On April 18, 2005, Dr. Jeffrey Recknagel performed a right knee arthroscopy and partial medial and lateral meniscectomy on Plaintiff's right knee. (Tr. 125-26). Following surgery, Plaintiff participated in physical therapy and was instructed to participate in a home exercise program. (Tr. 127-35).

On June 1, 2005, Plaintiff was examined by Dr. Recknagel. (Tr. 139). Plaintiff reported that he was experiencing "a lot of pain over the medial aspect of the knee." (Tr. 139). The doctor concluded that surgery had provided Plaintiff "modest" improvement. (Tr. 139).

On July 6, 2005, Plaintiff was examined by Dr. Recknagel. (Tr. 138). Plaintiff reported that he was continuing to experience knee pain. (Tr. 138). An examination of Plaintiff's knee revealed "mild to moderate effusion, moderate medial joint line tenderness, [and] moderate lateral joint line tenderness." (Tr. 138). Plaintiff requested a prescription for ibuprofen. (Tr. 138).

Treatment notes dated August 3, 2005, reveal that Plaintiff "is really not having any trouble with [his] diabetes." (Tr. 115).

On August 17, 2005, Plaintiff was examined by Dr. Recknagel. (Tr. 137). Plaintiff reported that he was continuing to experience "significant" pain in his right knee which was "worse with weight bearing." (Tr. 137). The doctor concluded that Plaintiff was suffering from degenerative joint disease. (Tr. 137). The doctor further concluded that Plaintiff was limited to "sit down" work "with limited walking." (Tr. 137).

---

[1] A poplital cyst refers to swelling caused by fluid from the knee joint protruding to the back of the knee. *See* Baker Cyst (Popliteal Cyst), available at http://www.medicinenet.com/baker_cyst/article.htm (last visited on October 5, 2009).

On January 10, 2006, Plaintiff was examined by Dr. Donald Sheill. (Tr. 144-45). Plaintiff reported that his knees are "especially uncomfortable" when he is inactive. (Tr. 144). Nevertheless, Plaintiff reported that he "is not exercising significantly." (Tr. 144). Plaintiff reported no diabetes-related difficulties. (Tr. 144). An examination of Plaintiff's right knee revealed "mild" tenderness and McMurray's test[2] was negative. (Tr. 145). An examination of Plaintiff's lower legs and ankles was unremarkable. (Tr. 145). Plaintiff walked normally without evidence of antalgia. (Tr. 145). He was also able to squat and recover and heel/toe walk. (Tr. 145). An examination of Plaintiff's upper extremities was unremarkable and Plaintiff exhibited 5/5 grip strength. (Tr. 145).

On April 26, 2006, Plaintiff was examined by Dr. Recknagel. (Tr. 161). Plaintiff reported that he was experiencing constant pain in his right knee. (Tr. 161). An examination of Plaintiff's knee revealed tenderness and mild to moderate effusion, but no significant ligamentous instability. (Tr. 161).

On November 28, 2007, Dr. Recknagel completed a report regarding Plaintiff's ability to perform physical activity. (Tr. 156-59). The doctor reported that Plaintiff can sit for one hour and stand and walk for 30 minutes each. (Tr. 156). The doctor reported that during an 8-hour workday, Plaintiff can sit for three hours, stand for one hour, walk for one hour, and sit/stand for two hours. (Tr. 156). Dr. Recknagel reported that Plaintiff can occasionally lift/carry 10 pounds. (Tr. 156). The doctor reported that Plaintiff can occasionally bend, twist, climb stairs, and reach above shoulder level, but can never squat, kneel, crouch, crawl, or stoop. (Tr. 157).

---

[2] McMurray's sign refers to the occurrence of a clicking sound during the manipulation of the knee, which is indicative of an injury of a meniscus of the knee joint. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* M-72 (Matthew Bender) (1996).

On December 13, 2007, Dr. Recknagel provided a sworn statement in support of Plaintiff's application for benefits. In his statement, Dr. Recknagel asserted that Plaintiff's claim that he needs to get off his feet "for relatively brief periods of time" throughout the day was "consistent with" Plaintiff's condition. (Tr. 177). The doctor asserted that Plaintiff's condition was unlikely to improve "without additional treatment." (Tr. 178). Dr. Recknagel concluded that Plaintiff was "totally disabled." (Tr. 178).

## **ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from diabetes mellitus, hypertension, obesity, status post medial and lateral meniscus tears involving the right knee, and status post right knee arthroscopy, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-16). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 16-19). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled"

6

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work with an option to sit/stand at will. (Tr. 16).

---

will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Thomas Gusloff.

The vocational expert testified that there existed approximately 66,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 202-03). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006) (870 jobs in region constitutes a significant number).

8

a. The ALJ Properly Assessed the Medical Evidence

On December 13, 2007, Dr. Recknagel provided a sworn statement in support of Plaintiff's application for benefits. In his statement, Dr. Recknagel asserted that Plaintiff's claim that he needs to get off his feet "for relatively brief periods of time" throughout the day was "consistent with" Plaintiff's condition. (Tr. 177). The doctor asserted that Plaintiff's condition was unlikely to improve "without additional treatment." (Tr. 178). Dr. Recknagel concluded that Plaintiff was "totally disabled." (Tr. 178). On November 28, 2007, Dr. Recknagel completed a report in which he concluded that during an 8-hour workday, Plaintiff can sit for three hours, stand for one hour, walk for one hour, and sit/stand for two hours. (Tr. 156). The doctor also reported that Plaintiff can occasionally lift/carry 10 pounds, bend, twist, climb stairs, and reach above shoulder level, but can never squat, kneel, crouch, crawl, or stoop. (Tr. 156-57). Plaintiff asserts that because Dr. Recknagel was his treating physician, the ALJ was obligated to afford controlling weight to his opinions, which Plaintiff asserts evidence his disability.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at

9

*2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. § 404.1527(d)(2); *see also*, *Wilson*, 378 F.3d at 544.

The ALJ discounted Dr. Recknagel's opinion. Specifically, the ALJ observed that Dr. Recknagel's opinion that Plaintiff is disabled due to degenerative arthritis of the knee was inconsistent with the objective medical evidence. (Tr. 18). The ALJ further observed that while Plaintiff reported "ongoing pain complaints," the doctor's treatment of Plaintiff "do[es] not show progressively aggressive treatment of the type one would. . .expect if claimant was experiencing debilitating pain levels." (Tr. 18). As discussed above, there exists substantial evidence to support the ALJ's decision to accord less than controlling weight to Dr. Recknagel's opinion.

b. The ALJ Properly Evaluated Plaintiff's Obesity

Plaintiff asserts that the ALJ failed to properly consider his obesity and its impact on his ability to perform work activities.

Social Security policy recognizes that obesity often "leads to" or "complicates" a claimant's impairments. *See* Titles II and XVI: Evaluation of Obesity, SSR 02-1p, 2000 WL 628049 at *3 (S.S.A., Sept. 12, 2002). Accordingly, the ALJ is required to "consider obesity" when determining whether: (1) a claimant has a medically determinable impairment; (2) whether any such impairment(s) is severe; (3) whether the claimant's impairment meet or equal the requirements of a listed impairment; (4) whether the claimant's impairments prevent her from performing her past relevant work or other work that exists in significant numbers. *Id.*

The ALJ complied with these requirements. The ALJ recognized that Plaintiff is obese and that such constitutes a severe impairment. (Tr. 15). The ALJ considered Plaintiff's impairments, including his obesity, and concluded that his impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-16). The ALJ further concluded that while Plaintiff's impairments, including his obesity, prevented him from performing his past relevant work, there nonetheless existed a significant number of jobs which he could perform despite his impairments. (Tr. 16-19). As discussed above, these determinations are supported by substantial evidence.

c. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 66,000 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: October 28, 2009         /s/ Ellen S. Carmody
                               ELLEN S. CARMODY
                               United States Magistrate Judge